UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

       Plaintiff,

v.                   Case No. 20-cv-1890-pp

NURSE BRIAN TAPLIN,
SERGEANT TIMOTHY KUTEA,
and SERGEANT KYLE DITMERS,

       Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS UNNECESSARY PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 8), DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

  Timothy Durley, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants ignored his request for nebulizer treatment when he was unable to breathe after officers sprayed another inmate with chemical agents. Dkt. Nos. 1, 7.[1] This decision resolves the plaintiff's motions for leave to proceed without

---

[1] The version of the complaint the court received on December 21, 2020 is not legible; the printing is too faint for the court to read. Dkt. No. 1. On December 22, 2020, the Clerk of Court sent the plaintiff a letter, instructing him to resubmit a legible version of his complaint. Dkt. No. 5. The plaintiff resubmitted the complaint and his motion for leave to proceed without prepaying the filing fee. Dkt. Nos. 7, 8. These documents are identical to the originals but are legible. The court will screen the resubmitted version of the complaint. Because the court is granting the plaintiff's first motion for leave to proceed without prepaying the filing fee, it will deny his second motion as duplicative

1

prepaying the filing fee, dkt. nos. 2, 8 denies his motion for a temporary restraining order, dkt. no. 4, and screens his complaint, dkt. no. 7.

## I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 23, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $0.76. Dkt. No. 6. The court received that fee on January 5, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.   Screening the Complaint

### A.   Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

2

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that on September 23, 2020, while he was in restricted housing, the inmate across from him, Donald Alford Lofton, was sprayed "with chemical agents." Dkt. No. 7 at 3. The plaintiff informed Nurse Brian Taplin and Sergeants Timothy Kutea and Kyle Ditmers (who were "on the scene") that he could not breathe, was wheezing severely and needed nebulizer treatment. Id. He received no response. Id. The plaintiff pressed his emergency call button to notify other staff members that he needed his nebulizer, that he could not breathe and that an inmate had just been sprayed with chemical agents. Id. at 4. The staff members (who, the plaintiff says, would not tell him their names and who are not defendants) said they would notify Nurse Taplin. Id.

Inmate Lofton was escorted to the cell next to the plaintiff's, and the plaintiff saw Nurse Taplin, informed Taplin that he was a severe asthmatic and that he was having trouble breathing due to Lofton being sprayed with chemical agents. Id. The plaintiff alleges that Taplin ignored his "cries for [his] nebulizer." Id. The plaintiff also saw Sergeants Kutea and Ditmers, telling them both that he needed his nebulizer treatment and that he couldn't breathe; he alleges that Kutea responded, "You made threats to harm staff today." Id. The plaintiff says he turned to Ditmers and asked, "So ya'll not gone give me my nebulizer treatment?" Id. He alleges that Ditmers responded, "You made threats to harm staff today, therefore your trap will not be open." Id. The plaintiff explained to Ditmers and Kutea that he was on "back of cell

restrictions," which required him to kneel down, place both hands on the wall and cross his ankles, and that a "trap box" was supposed to be used on his trap door. Id. at 4–5. He says that during this process, the nebulizer remains outside of his cell door, with two officers present to feed him the breathing tube through the box. Id. at 5. The plaintiff says that despite this explanation, Ditmers and Kutea told him, "You will not be getting your nebulizer treatment today due to you making threats to harm staff." Id. The plaintiff alleges that he "collapsed on the floor," and awoke what seemed like ninety minutes to two-and-a-half hours later. Id.

The plaintiff alleges that due to the chemical agents in his lungs, it has hard for him to sleep at night and "due to [his] passing out." Id. at 6.

The plaintiff has sued Taplin and Kutea and Ditmers in their individual and official capacities. Id. at 5. He seeks monetary damages and revocation of Taplin's nursing license. Id. at 6.

  C. <u>Analysis</u>

Claims against a member of the prison staff in his official capacity are another way to plead a cause of action against the entity that he represents or for which he works. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges the defendants are employees of the Wisconsin Department of Corrections (DOC) and work at Waupun. The court construes the claims against the defendants in their official capacities as having been brought against the DOC, the agency for which they work. <u>Graham</u>, 473 U.S. at 165–

66. Because claims against the DOC are "no different from a suit against the State itself," the court construes these claims as if the plaintiff brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). See also, Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).[2]

In addition to an award of damages, the plaintiff asks the court to revoke Nurse Taplin's nursing license. That license is provided through the State of Wisconsin's Department of Safety and Professional Services (DSPS). See https://dsps.wi.gov/Pages/RulesStatutes/Nursing.aspx. The court does not have the authority to direct the DSPS to revoke Nurse Taplin's nursing license. This means that the only relief the plaintiff may pursue through this lawsuit is his request for damages. Because a citizen cannot seek an award of damages from the state (the defendants in their official capacities), the plaintiff may proceed on his claims against the defendants only in their individual capacities. The court will dismiss his official capacity claims.

---

[2] The Eleventh Amendment also bars claims against states for damages unless the state has consented to suit or Congress and authorized suit. Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 695 (7th Cir. 2007). Because the statute resolves the plaintiff's official capacity claim, the court need not—and should not—reach the constitutional issue. See Thomas v. Illinois, 697 F.3d 612, 612-14 (7th Cir. 2012).

6

The plaintiff's individual capacity claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that he suffers from severe asthma and was unable to breath because of the chemical agent officers used on another inmate. He alleges that he informed the defendants that he could not breathe and needed his nebulizer. He asserts that the defendants either ignored him or told him they would not give him the nebulizer because he had threatened staff earlier in the day. Although threats to staff may be a legitimate reason to punish an inmate or exercise caution around him, it does not justify refusing treatment to an inmate in distress—such as when an inmate says that he has severe asthma and can't breathe. While one might wonder how the plaintiff was able

7

to explain his back-of-cell restrictions to the defendants when he could not breathe, that is a question of fact to be determined later in the case. At this early stage, the court must accept as true the plaintiff's allegations that he could not breathe, that he informed the defendants he could not breathe and needed to use his nebulizer, that they ignored him and refused to provide him a nebulizer and that as a result of not receiving nebulizer treatment he collapsed and lost consciousness for one to three hours. The court will permit the plaintiff to proceed on his Eighth Amendment claim against the defendants in their individual capacities.

### III.    Motion for a Temporary Restraining Order

The plaintiff also moves for a temporary restraining order. Dkt. No. 4. He says he "would like to file a writ[t]en temporarily restrain[in]g motion against all the Defendant's." Id. He names Nurse Taplin, Sergeants Kutea and Ditmers and "Dr Ann Mary Moore." Id. Only Taplin, Kutea and Ditmers are defendants in this lawsuit. Dr. Moore is a defendant in the plaintiff's other lawsuit before this court—Case No. 20-cv-1889-pp. The court will address his motion for a TRO only as it pertains to Taplin, Kutea and Ditmers, and will address his motion against Dr. Moore in the screening order Case No. 20-cv-1889.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some

likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish the three threshold factors, the court must move on to balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

The plaintiff's motion does not satisfy any of the criteria for a TRO. He says that he "would like to file" a TRO against the defendants but does not explain the reason he is seeking a restraining order or what he wants the court to restrain the defendants from doing. It appears that the events of which the plaintiff complains have concluded. At this stage of the case, the court cannot determine whether the plaintiff's lawsuit has any likelihood of success on the merits. The plaintiff has not shown that he will suffer irreparable harm without a TRO or that money damages—the traditional "remedy at law"—will not be sufficient to address his injuries. The court will deny the plaintiff's motion for a TRO.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

9

The court **DENIES** the plaintiff's second motion for leave to proceed without prepaying the filing fee as duplicative. Dkt. No. 8.

The court **DENIES** the plaintiff's motion for a temporary restraining order. Dkt. No. 4.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint (Dkt. No. 7) and this order to the Wisconsin Department of Justice for service on defendants Brian Taplin, Timothy Kutea and Kyle Ditmers. Under the informal service agreement, the court **ORDERS** the defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.24** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin, this 16th day of February, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**